IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

BOBBY WAYNE SANDERS,           )
                               )
            Plaintiff,         )
                               )
v.                             )    Case No. CIV-15-146-JHP-KEW
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security Administration,       )
                               )
            Defendant.         )

## REPORT AND RECOMMENDATION

Plaintiff Bobby Wayne Sanders (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on July 8, 1963 and was 50 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a general laborer and lineman. Claimant alleges an inability to work beginning October 30, 2010 due to limitations resulting from angina pectoris, anxiety disorder, hypertension, GERD, and COPD.

**Procedural History**

On October 17, 2011, Claimant protectively filed for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On August 20, 2013, an administrative hearing was conducted by Administrative Law Judge ("ALJ") Bernard Porter in McAlester, Oklahoma. The ALJ entered an unfavorable decision on September 24, 2013. The Appeals Council denied review on March 27, 2015. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform less than a full range of light work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to conduct a proper credibility determination; (2) reaching an erroneous RFC; and (3) failing to fully develop the record.

**Credibility Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of angina pectoris, anxiety disorder,

hypertension, GERD, and COPD. (Tr. 14). The ALJ concluded that Claimant retained the RFC to perform less than a full range of light work. In so finding, the ALJ determined Claimant could lift/carry 20 pounds occasionally and 10 pounds frequently, sit for six hours, stand for six hours, and walk for six hours. He was limited to frequent handling, fingering, and feeling. Claimant could occasionally climb ramps or stairs, but never ladders or scaffolds. Claimant could never crawl. He should not work around unprotected heights or moving mechanical parts. He could not have concentrated exposure to dust, fumes, and gases. He was limited to simple work with simple work-related decisions. The ALJ limited Claimant to only occasional interaction with supervisors and co-workers, but no interaction with the public. Any off task time would be accommodated by normal breaks. (Tr. 17). After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform the representative jobs of laundry folder, laundry inspector, and felt inspector, both of which the ALJ found to exist in sufficient numbers both regionally and nationally. (Tr. 23). As a result, the ALJ found Claimant was not disabled from October 17, 2011 through the date of the decision. (Tr. 24).

Claimant first contends the ALJ failed to engage in a proper

evaluation of his credibility. Claimant testified that he considered his lungs prevented him from working because he can't breathe properly so that it feels he is being strangled and suffocated which makes his heart overwork. He is on inhalers and nitroglycerin. As a result, he feels anti-social and does not like to be around people. He stated he was diagnosed with COPD by nurse Patricia Redhage at the Cherokee Nation Clinic in Sallisaw. She put Claimant on Albuterol and a steroid inhaler and told him not to be around dust. Claimant states he suffers from angina pain due to his heart being overworked and is on medication for blood pressure and beta blockers. He notices that his chest pain gets worse with lifting and physical exertion. Claimant also stated that he stays drowsy and takes naps during the day as a result of the medication he is taking. (Tr. 33-36).

Claimant stated that he had tried to return to work hanging sheetrock but that the dust and lead poisoning prevented him from continuing. He last worked a full time job between 1998 and 1999. (Tr. 31-32). He testified that his typical day includes laundry, washing some dishes, sweep a floor, and take out the trash. He does not visit people, go to church, or fish or hunt. (Tr. 40-42). Claimant drove himself 30 to 40 minutes to the hearing. (Tr. 30).

Claimant stated his lead poisoning arose in 1989 when he

6

worked in a lead plating business. He stated he had 39% lead in his body. (Tr. 50). He attributes his nervousness to this poisoning. Id. Claimant also reported problems with memory. (Tr. 51).

The ALJ found Claimant's testimony not entirely credible. He noted Claimant continued to work for at least almost a decade after Claimant's alleged lead poisoning in 1989 but that he also told a consultative examiner he worked until 2007 when he had difficulty getting paid by the owner of the business for which he worked. Treatment records indicated Claimant told the examiner he was going to look for work in June of 2013. Pulmonary studies indicated only a mild obstruction and a note from nurse Redhage indicated Claimant had oxygen saturation of 98%. Cardiac testing was essentially normal outside of hypertension. Claimant's cardiologist found any chest pain was not cardiac related. The ALJ also noted no treatment records for mental health issues despite Claimant's assertion of nervousness, anti-social tendencies, and anger. The ALJ also found inconsistencies in Claimant's statements regarding activities of daily living. (Tr. 19).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68

F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor

recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

In this instance, the ALJ made well-supported findings on credibility, noting considerable discrepancies in Claimant's statements concerning the effects of his condition upon his ability to function. Claimant obliquely states that the ALJ's failure to include a statement of the drowsy effect of his medication is reversible error. The ALJ did, in fact, consider this side effect in his decision. (Tr. 18). This Court finds no error in the ALJ's credibility analysis.

### RFC Determination

Claimant next asserts the ALJ's RFC is not supported by the medical record. Initially, Claimant cites to his subjective testimony to support a more restrictive RFC. As stated, no error is found in the ALJ's credibility assessment and, therefore, no additional restrictions are required in the RFC based upon Claimant's testimony. Claimant cites to no other omission of evidence from the ALJ's consideration other than his own subjective testimony.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287

F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012).

On January 23, 2012, Claimant underwent a consultative physical examination by Dr. Wojciech L. Dulowski. Dr. Dulowski found Claimant had a normal gait with good safety stability and an ability to walk on tiptoes and heels. His grip strength of both hands was 5/5 with good gross and fine manipulation. (Tr. 305). His heart sounded good with regular rate and rhythm. His lungs revealed vesicular breath sounds with no wheezing or rhonchi. Id.

10

Claimant's spinal alignment was normal with slight tenderness of the midline of the lumbar spine. His range of motion was normal in the upper and lower extremities. (Tr. 306). The ALJ's RFC assessment was supported by substantial evidence.

Nothing in the medical record supports further restriction in Claimant's ability to engage in basic work activities than found by the ALJ in his RFC analysis. This Court finds no error in the ALJ's ultimate RFC findings.

## Duty to Develop the Record

In an woefully undeveloped argument, Claimant contends the ALJ failed to adequately develop the record since he "clearly had physical impairments that were not treated or sufficiently addressed that would result in severely limiting exertional and non-exertional impairmenets (sic)." Unfortunately, Claimant fails to enlighten this Court as to the nature of these ethereal physical impairments. It is not this Court's responsibility to create Claimant's arguments for him. The record was adequately developed to enable the ALJ to reach his decision.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing

reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 8th day of August, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE